THE PEOPLE OF PUERTO RICO, Accuser and Appellee, *v.* LUIS ADORNO MEDINA k/a LUIS RIVERA ADORNO, Defendant and Appellant.

No. CR-64-500.     Decided June 24, 1965.

*Santos P. Amadeo* and *Francisco Coll Moya* for appellant. *J. B. Fernández Badillo, Solicitor General,* and *J. F. Rodríguez Rivera, Assistant Solicitor General,* for The People.

Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Santana Becerra, and Mr. Justice Dávila.

MR. JUSTICE BELAVAL delivered the opinion of the Court.

The Prosecuting Attorney of the Superior Court of Puerto Rico, San Juan Part, filed an information for violation of Act No. 220 of 1948, against Luis Adorno Medina, known as Luis Rivera Adorno, Rafael Peraza Dávila, and José Rosendo Vázquez Romero, known as Chendo, because "on or about August 3, 1960 and in Río Piedras, P.R., which is a part of the Superior Court of Puerto Rico, San Juan Part, they illegally, willfully, criminally, and maliciously, had in their possession tickets with numbers of four figures which could be used and were being used by the defendants in the unlawful game of clandestine lottery."

The provision violated is § 4 of Act No. 220 of 1948—33 L.P.R.A. § 1250 (p. 910)—which provides: "Any person caught carrying or transporting or who has in his possession for any reason any *papeleta, billete,* ticket, notebook, list of numbers or letters, slips, or implements which can be used for the unlawful games of *bolita, bolipool,* combinations connected with the pools or *bancas* of the race tracks of Puerto Rico, and clandestine lotteries, and any person who possesses, sells, or in any way transports these or any other similar ones which may be utilized or used in said unlawful games or connected with the practice thereof, shall be guilty of a public offense and shall be immediately arrested and the case shall be brought without delay before the prosecuting attorney having jurisdiction on the matter, who shall file the proper information. Such person shall, upon conviction, be punished by imprisonment in jail for a term of not less than six (6) months or more than two (2) years. . . ."

Defendant Luis Adorno Medina was found guilty of the offense charged and sentenced to serve one year in jail. He appealed to this Court from said sentence. He assigns as sole error the following: "The prosecution and judgment rendered against defendant-appellant are void because he was charged with an offense and sentenced for another, and moreover, there existed a variance between the information and the evidence introduced to convict him."

We must specify that the information charged defendant with having in his possession tickets with numbers of four figures which could be used and were used by defendants for the unlawful game of clandestine lottery. The evidence of the people described the criminal act committed as follows:

Prosecuting Attorney: "According to your personal knowledge, which was the operation for transactions concerning notebooks like those, which was the operation to be carried out and how were those notebooks manipulated on August 3, 1960 and on subsequent days within the *bolipool* market?"

Witness Feliciano (undercover agent): "Those *bolipool* notebooks would be sold, would be distributed by me with alleged *boliteros* of whom I was in charge. I say alleged because actually I did not have them and they would be sold at twenty cents each fraction of the *bolipool* sheet and twenty cents would be collected for each fraction and one thousand five hundred dollars per fraction would be paid for the first prize, and the whole sheet would pay, if bought complete, twenty-five thousand dollars for the first prize."

Prosecuting Attorney: "And each twenty-cent fraction paid one thousand five hundred dollars?"

Witness: "Yes, sir."

Prosecuting Attorney: "And besides that first prize, you had. . . ."

Witness (interrupting) "A second prize of five hundred dollars and as much as five hundred prizes and consolation prizes."

Prosecuting Attorney: "How did you know the winning number?"

Witness: "The winning prize was known because the sheet having the last four figures of the winning number of the official lottery of Puerto Rico would be awarded the prize."

Prosecuting Attorney: "The last four figures of the official lottery of Puerto Rico would be used to determine which of these sheets was to be the winning one?"

Witness: "Yes, sir."

The error assigned by defendant-appellant's counsel is based on the following question of law: "In the information it is alleged that defendant had in his possession tickets with numbers of four figures which could be and were being used by defendants in the unlawful game of clandestine lottery. The oral and objective evidence introduced against defendant-appellant showed that this material could be used in the games of *bolita* or *bolipool*. . . . Section 4 of Act No. 220 of May 15, 1948, in addition to the games of '*bolita*,' '*bolipool*,' or 'pools or *bancas* of the race tracks,' also mentions the 'clandestine lotteries.' In other words, any person who operates a clandestine *banca* is guilty of public offense, as well as persons who operate the '*bolita*' or '*bolipool*' business are also guilty of public offense. That is to say, each one of these activities constitutes a different offense, and therefore, the defendant should be notified in the information as to the specific offense he is charged with, and the evidence should correspond to the nature of the offense charged. . . . Defendant-appellant is charged with having a clandestine *banca* and he is tried on evidence which shows that he was operating with illegal material which could be used to play the unlawful game of *bolita*. Therefore, defendant-appellant was not informed with the accuracy required by the constitutional mandate, that he should be notified of the offense charged against him. And, moreover, the evidence introduced against him is to prove an offense different from the one charged."

If we examine the text of § 4 carefully, it appears clearly that the offense pursued is the possession of unlawful material susceptible of use in the game of *bolita*. The term *"bolita"* in its common acception most sensible to the legislative system of ideas is the generic inclusive, and the other terms used—*"bolipool,"* combinations connected with the pools or *bancas* of the racetracks, clandestine lotteries—are simple alternate denominations by which the same unlawful game is known. The reason for this diversity of names is that originally the *bolita* was drawn by pulling out from a shake bottle manipulated by the banker himself, or from the lists of foreign lotteries, the combinations of the supposed winning numbers. Later, in order to make it appear legal, a number was taken, the confection of which was not made to depend on the banker's will or on a list of scant popular circulation, for example, substituting them by the last figures of the amount gambled in the six or seven horse races the same day, or of the amount gambled in a determined race, or the last figures of the first prizes of the lottery of Puerto Rico.

In legal substance, the *bolita* is nothing more than a clandestine lottery, wherein the bets and the list of prizes do not have the supervision nor the publicity required by the State for the legalized lottery. Each one of its denominations is not a different offense, but a different way of referring to the common acception.

The judgment rendered on August 12, 1964 by the Superior Court of Puerto Rico, San Juan Part, will be affirmed.